IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| AMERICAN MEDICAL ASSOCIATION, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 14 C 5280 |
| 3LIONS PUBLISHING, INC., et al., | ) | Judge Virginia M. Kendall |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants 3Lions Publishing, Inc., Carlos Leyva, and the Digital Business Law Group move to dismiss the American Medical Association's ("AMA") entire Complaint (Dkt. No. 1) for lack of personal jurisdiction and move to dismiss Counts II and III of the Complaint for failure to state a claim under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure respectively. In the alternative, Defendants ask the Court to transfer the case to the Middle District of Florida pursuant to 28 U.S.C. § 1404. The AMA seeks a declaratory judgment that an article it published does not infringe on a work for which 3Lions holds the copyright. The AMA brought the declaratory judgment action after Defendants threatened the AMA with litigation if it did not pay them $7,500 or take down the article within a specified period of time. The AMA also alleges that the communications it received from Defendants were part of a large-scale copyright trolling scheme and, for that reason, seeks to hold Defendants liable under the Racketeer Influenced and Corrupt Organizations Act, commonly known as RICO, 18 U.S.C. § 1961 *et seq.*, and the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/2 *et seq.* Subsequent to the AMA's filing of the Complaint in this case, Defendant 3Lions

filed suit against the AMA in the Middle District of Florida, seeking to hold the AMA liable for copyright infringement and violations of Florida state law. That case was eventually transferred to the Northern District of Illinois and assigned to this Court. It is currently pending as Case No. 14 C 7411. For the reasons stated below, the motion is granted in part and denied in part. The Court finds that personal jurisdiction over the Defendants exists, but dismisses the RICO and UDTPA counts for failure to state a claim on which relief can be granted. The Court declines to transfer the Case to the Middle District of Florida. Further, the Court orders the parties to show cause why this case should not be consolidated with Case No. 14 C 7411.

## BACKGROUND

The Court takes the following allegations in the Complaint as true for the purposes of the motion to dismiss for failure to state a claim. *See Vinson v. Vermilion County, Ill.*, --- F.3d ---, No. 12-3790, 2015 WL 343673 at *1 (7th Cir. Jan. 27, 2015). Defendant 3Lions is a publishing corporation incorporated in Florida. (Compl. ¶ 3). 3Lions published an article on the HITECH Act entitled "HITECH Survival Guide" (the "3Lions Article"). (*Id.* ¶ 10). 3Lions was not the author of the work, but had acquired the rights by assignment from Defendant Levya and his wife, Deborah. (Dkt. No. 1-1 p. 13). The 3Lions Article advised physicians on how to navigate the Health Information Technology for Economic and Clinical Health (or HITECH) Act, a statute passed by Congress in 2009. 3Lions registered a copyright in the 3Lions Article in 2010. (Compl. ¶ 10).

The AMA is a not-for-profit corporation organized and existing under the laws of Illinois with its principal place of business in Chicago. It is a professional association of physicians and medical students. (*Id.* ¶ 1). The AMA maintains a website a website and occasionally posts information on topics in medicine and public health that might be relevant to its members and the public. In March 2011, the AMA published an article entitled "Health Law and the HITECH Act

2

– An Overview" (the "AMA Article"). (*Id.* ¶ 9). The AMA Article concerned the same subject matter as the 3Lions Article, but the AMA claims it was created without copying any material in the 3Lions Article. (*Id.* ¶ 17).

On July 1, 2014, 3Lions, through its counsel Carlos Levya of the Digital Business Law Group,[1] sent a letter to the AMA alleging that the AMA Article infringed on the 3Lions Article. (*Id.* ¶ 11). The AMA investigated the claim and determined that the AMA Article was independently created. The AMA responded by letter on July 3, 2014 and denied any wrongdoing. 3Lions, through their attorneys, replied by email on July 3 and notified the AMA that it would file suit in the Middle District of Florida in five business days unless the AMA agreed to settle the claim for $7,500. (*Id.* ¶¶ 12-14).

Before the five business day deadline, the AMA filed the Complaint in Chicago on July 10, 2014 and the case was assigned to this Court. 3Lions honored its promise to file suit in five business days. It filed a complaint in the Middle District of Florida on July 14, 2014. There, 3Lions alleged substantive copyright infringement against the AMA as well as unfair competition under Florida common law. The AMA filed a motion to dismiss or in the alternative to transfer the case to this Court. While the present motion to dismiss was pending, the Florida court granted the motion to transfer and the case became Case No. 14 C 7411 in this Court.

In transferring the case to the Northern District of Illinois, Judge Scriven of the Middle District of Florida relied on the 11th Circuit's "first-filed rule." "The first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case." *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013). Judge Scriven relied wholly on the fact that the

---

[1] Levya and DBLG are also named as defendants.

3

AMA had filed its suit in Chicago four days before 3Lions filed suit in Florida, stating that "even if the Court were inclined to agree with 3Lions that the case should be tried [in Florida], it has no authority to mandate this result." (14 C 7411 Dkt. No. 24 p. 6) (quoting *Supreme Int'l. Corp. v. Anheuser-Busch, Inc.*, 972 F. Supp. 604, 606 (S.D. Fla. 1997)).

Judge Scriven found it likely, but did not hold, that the anticipatory filing exception to the first-filed rule did not apply to the 3Lions case. "That exception applies when one party, on notice of a potential lawsuit, files a declaratory judgment action in its home forum. In that circumstance, the "first-filed" court can decline to invoke the first-filed rule to retain the strategically filed action." (14 C 7411 Dkt. No.24 p. 5) (quoting *Collegiate Licensing*, 713 F.3d at 78). Judge Scriven reasoned that because the AMA complaint included RICO and state law claims as well as the declaratory judgment claim, it was likely not a mirror image of the infringement suit filed in Florida. Moreover, the anticipatory filing exception does not require the second court to hear the case, but simply removes the presumption in favor of the court in which the suit was filed first.

## DISCUSSION

Defendants have moved to dismiss the Complaint in its entirety based on the Court's lack of personal jurisdiction over the Defendants. (Dkt. No. 16). Defendants have also moved to dismiss Counts II and III of the Complaint, the RICO and IUDTPA claims, on the basis that the AMA has not stated a claim on which the Court can grant relief with respect to these two counts. In the alternative, Defendants seek to transfer the case to the Middle District of Florida. The Court addresses personal jurisdiction first, followed by the sufficiency of the Complaint under Rule 12(b)(6), and finally addresses the motion to transfer. The motion is granted in part and denied in part. The motion is denied with respect to personal jurisdiction, granted with respect to Counts II and III, and denied with respect to the motion to transfer.

**I.    12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction**

   **A.    Legal Standard**

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides for dismissal when the Court lacks personal jurisdiction over a defendant. Because no relevant federal statute authorizes nationwide service of process, the Court may only exercise personal jurisdiction over a defendant if that exercise is consistent both with Illinois law and federal due process. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014) (citing Fed R. Civ. P. 4(k)(1)(A)); *see also Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). The Illinois long-arm statute is coterminous with federal due process so the inquiries merge. *See Northern Grain Marketing, LLC v. Greving*, 743 F.3d 487 (7th Cir. 2014); *see also* 735 ILCS 5/2-209(c). The burden of establishing personal jurisdiction is on the plaintiff, who must make a prima facie showing of jurisdictional facts. *See Tamburo*, 601 F.3d at 700. The Court must "read the complaint liberally, in its entity, and with every inference drawn in favor of" the plaintiff. *Central States, Se. & Sw. Areas Pension Fund v. Phencorp Reins. Co.*, 440 F.3d 870, 878 (7th Cir. 2006). (internal quotation marks and citation omitted).

   **B.    Personal Jurisdiction over the Defendants is Proper**

There is no allegation that any defendant is subject to general personal jurisdiction, so the Court focuses its inquiry into whether an exercise of specific personal jurisdiction is appropriate. "Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo*, 601 F.3d at 702 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Therefore, the defendant must have "certain minimum contacts with the forum state

such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice" *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800-01 (7th Cir. 2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)), and the "defendant's contacts with the forum state must directly relate to the challenged conduct or transaction." *See Northern Grain Marketing*, 743 F.3d at 492. The defendant's contacts with the forum state must be more than "merely random, fortuitous, or attenuated[.]" *Tamburo*, 601 F.3d at 702 (quoting *Burger King*, 471 U.S. at 475). The relevant contacts are the ones that "the defendant *himself* creates with the forum [s]tate," not the contacts between the plaintiff and the forum or the defendant and the plaintiff if those contacts are unrelated to the forum *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (quoting *Burger King*, 471 U.S. at 475).

Here, each of the causes of action arises out of the defendants' contacts with the state. *See Real Action Paintball*, 751 F.3d at 801-02. The letters themselves supply the factual basis for both the RICO allegation and the UDPTA claim. In other words, Defendants' contacts with Illinois were related to (in fact, were) their allegedly unlawful acts. *See id.* Specific personal jurisdiction over all defendants exists with respect to the RICO and UDTPA claims because those claims arise directly out of defendants' contact with Illinois.

Though the analysis is less straight forward, the declaratory judgment claim also arises out of 3Lions's contacts with Illinois.[2] 3Lions sent two letters to the AMA in Illinois threatening imminent litigation if their demands were not met. (Compl. ¶ 15). The present declaratory judgment action arises out of those contacts. A single letter can provide the basis for specific jurisdiction when the litigation arises out of that letter. *See Felland v. Clifton*, 682 F.3d 665, 669

---

[2] While the Complaint does not explicitly state that the declaratory judgment count is specific to 3Lions, this must be so. 3Lions is the holder of the copyrights on which the AMA's work may infringe and 3Lions is sole the plaintiff in the parallel infringement action, the fear of which gave rise to the present declaratory action.

(7th Cir. 2012). Here, 3Lions, through its counsel, intentionally directed communications to Illinois that accused the AMA of copyright infringement and threatened litigation. The AMA denied the allegations by letter and filed the present declaratory judgment action, as it had the right to do. *See Hyatt Int'l Hotel Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002) (declaratory judgment action appropriate where declaratory plaintiff can "show that the feared lawsuit from the other party is immediate and real, rather than merely speculative"). The contacts between 3Lions and Illinois are not pervasive, but the connection between those limited contacts and the present litigation is sufficiently close that it does not offend traditional notions of fair play and substantial justice to require 3Lions to litigate the declaratory judgment count in this Court. The Court finds that it may properly exercise personal jurisdiction over 3Lions because the claim arises out of the contacts that 3Lions has created between itself and Illinois.

The Court therefore denies the 12(b)(2) motion to dismiss for lack of personal jurisdiction and proceeds to consider whether Counts II and III of the complaint are adequately pled.

**II.    12(b)(6) Motion to Dismiss Counts II and III for Failure to State Claim**

    **A.    Legal Standard**

A complaint "must state a claim that is plausible on its face" in order to survive a Rule 12(b)(6) motion to dismiss. *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plaintiff must allege that all elements of its claims are satisfies, but most supply more than bare legal conclusions in order to survive a 12(b)(6) motion to dismiss.

7

*Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1147 (7th Cir. 2010). "[A]llegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012).

  **B. The RICO Count is not adequately pleaded**

  Defendants also move to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim with respect to its RICO count. A civil RICO claim requires allegations of conduct of an enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962; *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007). "A 'pattern' of racketeering activity consists of at least two predicate acts of racketeering (e.g., extortion, mail fraud) within ten years." *Nowicki v. Delao*, 506 F. App'x 514, 516 (7th Cir. 2014). "To fulfill the pattern requirement, plaintiffs must satisfy the so-called 'continuity plus relationship] test: the predicate acts must be related to one another (the relationship prong) and pose a threat of continued criminal activity (the continuity prong). *Jennings*, 495 F.3d at 473 (citing *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989)) (internal quotation marks omitted). The Court is also mindful that "the statute was never intended to allow plaintiffs to turn garden-variety state law fraud claims into federal RICO actions." *Id.* at 472.

  The Complaint does not sufficiently allege a pattern of racketeering activity under the RICO Act. Preliminarily, the Court notes that the Complaint's initial allegation of a pattern of racketeering activity (Compl. ¶ 22) is a legal conclusion which the Court need not, and does not, accept as true at the 12(b)(6) stage. *See Adams*, 742 F.3d at 728 ("allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion"). More fundamentally, the Complaint does not plausibly allege the requisite two predicate acts, rendering the existence of a pattern of activity overly speculative. According to the Complaint, the predicate acts supporting

the RICO charge are (1) the cease and desist letter in this case and (2) a similar letter sent to St. Luke's Episcopal Health Systems. (Compl. ¶¶ 21-26). The AMA suggests that the letters constitute extortion, which can serve as a predicate act under RICO. *See* 18 U.S.C. § 1961(1). These allegations are insufficient because to construe either act as a racketeering activity would be overly speculative. With respect to the cease and desist letter that the AMA received, the Court has no basis for concluding that it was sent for an improper purpose; the AMA Article may, in fact, infringe on 3Lions's copyright.

Even if the Court were to accept the AMA's characterization of the letter it received, however, the RICO claim would nonetheless fail. The letter to St. Luke's Episcopal Health System does not constitute a second predicate act and one predicate act is insufficient. The Complaint notes explicitly that St. Luke's Episcopal Health Systems settled their case with 3Lions. The mere fact that a case settled out of court is not an indication of wrongdoing by any party to the settlement. The Complaint states no facts which bring the RICO allegations "above the speculative level." *G & S Holdings, LLC v. Cont'l Cas. Co.*, 697 F.3d 535, 537-38 (7th Cir. 2012). It is too great a leap to conclude, without any factual support, that a settlement between 3Lions and St. Luke's was the result of extortion. Nor is the AMA's suggestion that these two communications, neither of which is demonstrably extortionate, are a part of a pattern of racketeering activity sufficient to save the count. *See Nowicki*, 506 F. App'x at 516-17. (bare suggestion that individual acts are part of something greater insufficient to allege pattern of racketeering activity). Because the allegations of the pattern of racketeering activity are overly speculative, the RICO count is dismissed for failure to state a claim.

### C. The UDTPA claim is not adequately pleaded

The Illinois version of the UDTPA prohibits "disparag[ing] the goods, services, or business of another by false or misleading representation of fact." 815 ILCS 510/2/(a)(8). To state a claim under the statute, the plaintiff must allege that the defendant disparaged the quality of its goods or services. *See, e.g.*, *Kole v. Village of Norridge*, 941 F. Supp. 2d 933, 963 (N.D. Ill. 2013) (Durkin, J.) (citing *Am. Wheel & Eng'g Co. v. Dana Molded Prods., Inc.*, 476 N.E2d 1291, 1295-96 (Ill. App. Ct. 1985)). The UDTPA does not apply to statements that impugn a business's integrity, but do not implicate the quality of the business's goods or services. *See, e.g.*, *Lyssenko v. Int'l Titanium Powder, LLC*, No. 07 C 6678, 2008 WL 8625903 at *6, (N.D. Ill. May 6, 2008) (Gettleman, J.) ("While statements that impugn an individual's character or integrity in his or her profession may give rise to liability for defamation, statements that criticize 'the quality of one's goods or services' may properly be asserted under the UDTPA.") (quoting *Crinkley v. Dow Jones & Co.*, 385 N.E.2d 714, 720 (Ill. App. Ct. 1978)); *see also Global Relief Found. v. New York Times Co.*, No. 01 C 8821, 2002 WL 31045394 at *13 (N.D. Ill. Sept. 11, 2002) (Coar, J.) (claim attacking conduct or speech of defendant "blurs the distinction between defamation and commercial disparagement).

The Complaint's allegations are insufficient to state a claim under the UDTPA because the purportedly unlawful conduct attacked, at most, the AMA's integrity, but not the quality of its goods or services. The basis for the UDTPA claim is that "the false accusations made against the AMA violate section 2" of the UDTPA. (AMA Compl. ¶ 28). The AMA's position relies on subsection (8) of the UDTPA, which prohibits "disparaging the goods, services, or business of another by false or misleading representation of fact." 815 ILCS 510/2/(a)(8). These accusations are insufficient to state a claim under the UDTPA because they attach only the integrity of the

AMA and not the quality of its goods, services, or business. Indeed, it strains logic to suggest that 3Lions at once disparaged the quality of the article and claimed credit for it. The cease and desist letter is better read to attack the AMA's credibility in suggesting that it would claim credit for an article it did not produce. Because attacks on integrity are outside the scope of the UDTPA's prohibition, the UDTPA claim is dismissed.

### III.  28 U.S.C. § 1404(a) Motion to Transfer

#### A.  Legal Standard

Even though the Court has determined that the declaratory judgment action is properly in this Court, the Court retains authority "[f]or the convenience of parties and witnesses, in the interest of justice," to transfer the action to "any other district or division where it might have been brought." 28 U.S.C. § 1404. The Court is not limited in its analysis, but instead may "take into account all factors relevant to convenience and/or the interests of justice." *Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). Courts have identified various factors relevant to the analysis of the convenience of the parties and witnesses, including the plaintiff's choice of forum, the situs of material events giving rise to the complaint, the relative ease of access to proof, the parties' convenience, and the witnesses' convenience. *See Research Automation*, 626 F.3d at 978. "The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Id.* "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). The Court has substantial discretion to in deciding whether transfer is appropriate. *See Research Automation*, 626 F.3d at

977-78 ("we grant a substantial degree of deference to the district court in deciding whether transfer is appropriate").

B. **Transfer to the Middle District of Florida is Inappropriate**

Here, the threshold question is whether venue is proper in the potential transferee forum, namely Middle District of Florida, Tampa Division. *See* 28 U.S.C. ¶ 1404(a) (permitting transfer to any federal forum "where it might have been brought"). Though neither party addressed this issue in its briefs, the Court finds that venue there would be proper under 28 U.S.C. § 1391(b)(1) because all defendants are Florida residents. (Compl. ¶ 3). Venue is proper in the Northern District of Illinois is proper, and thus § 1404 and not § 1406 is relevant, because a substantial part of the events giving rise to the claim, i.e. the AMA's allegedly infringing conduct, occurred in Illinois and 3Lions is subject to personal jurisdiction in this District, as described above. *See* §§ 1391(b)(2), (3). Because venue is proper in both districts, the Court proceeds to determine whether transfer would lead to greater convenience for the parties and witnesses as well as advance the interests of justice.

Generally, the plaintiff's choice of forum is entitled to substantial deference, particularly when it is the plaintiff's home forum. *See In re Nat'l Presto Indus.*, 347 F.3d at 664. This rule, however, "loses its significance entirely" when "the case involves two identical suits in distinct venues." *Research Automation*, 626 F.3d at 980. Having dismissed the RICO and UDTPA counts, the Court is conscious of the fact that the current state of the lawsuit is an anticipatory filing competing with a parallel coercive action relying on the same facts. *See id*. Thus, the Court's deference to the AMA's choice of forum is substantially reduced. This does not require, however, that the Court acquiesce in 3Lions's choice of forum. Instead, the fact that a competing coercive action exists merely requires the Court to apply the relevant factors under § 1404

12

without a thumb on the scale in favor of the first-filed action. *See id.* ("any mechanical solution of such a problem would not be wise judicial administration") (internal quotation marks and citation omitted). Therefore, the Court gives no weight to the fact that the present action was filed before the Florida action, but likewise does not find that mere existence of a parallel, coercive suit requires transfer.[3]

The Northern District of Illinois is a more convenient forum for the parties and the majority of the relevant witnesses. *See Research Automation*, 626 F.3d at 978 ("With respect to the convenience evaluation, courts generally consider the availability of and access to witnesses, and each party's access to and distance from resources in each forum."). The AMA's records of that publication are also in Illinois. (Dkt. No.24 p. 14). The AMA's principal place of business is in Illinois. (Compl. ¶ 1). While Defendants created and published their works in Florida, this conduct is not relevant to the potential infringement underlying this suit. Instead, the AMA's actions, which took place in Illinois, are at issue in this case. To the extent that the actions of the author of the works that the AMA eventually published are relevant, those actions took place in Pennsylvania, which does not counsel in favor of transfer. (Dkt. No. 17 p. 13). In sum, the location of the events material to the disposition of this case counsels in favor of trying the case in Illinois.

That the situs of material events giving rise to the lawsuit is Illinois counsels against transfer. *See, e.g.*, *Villalobos v. Castaneda*, No. 12 C 8218, 2013 WL 5433795 at *8 (N.D. Ill. Sep. 27, 2013) ("the location of the infringer's place of business is often the critical and controlling consideration"); *see also Confederation des Brasseries de Belgique v. Coors Brewing Co.*, No. 99 C 7526, 2000 WL 88847, at *3 (N.D. Ill. Jan. 20, 2000) ("In cases involving

---

[3] Moreover, the parallel, coercive suit is now pending in this Court following its transfer from Florida.

copyright . . . claims, the material activities central to the claims occur where the allegedly infringing products are designed, manufactured and marketed). The AMA made the decision to publish the work from Illinois. The AMA article was composed in Pennsylvania, but that fact does not counsel in favor of transfer to Florida.

The "interest of justice" also does not counsel in favor of transfer. *See Research Automation*, 626 F.3d at 978. Declining to transfer the case provides the benefit of being able to consolidate readily the present case with Case No. 14 C 7411 which is currently pending before this Court. *See, e.g.*, *Qurio Holdings, Inc. v. Comcast Cable Comms., LLC*, No. 14 C 7488, 2015 WL 535981 at *4 (N.D. Ill. Feb. 9, 2015) (Feinerman, J.) ("The Seventh Circuit . . . has specifically identified [the possibility of consolidation] as a relevant consideration under section 1404(a).") (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986); *see also Van Dusen v. Barack*, 376 U.S. 612, 644 (1964) (venue where consolidation is possible is favored). In 14 C 7411, 3Lions seeks to hold the AMA liable for copyright infringement and violation of Florida state law. Ready consolidation is possible here because venue is proper in both cases and both case are currently pending before this Court.[4] It is not clear that 14 C 7411 could properly be transferred back to the Middle District of Florida. No defendant in that case resides in Florida, the events giving rise to the claim occurred in Illinois, and it is not clear that the AMA would be subject to personal jurisdiction in Florida. At the very least, those points would need to be litigated before consolidation could take place. Indeed, the AMA asserted these points in a motion to dismiss or transfer that it filed in the Florida court.[5] In this District, consolidation of the two pending cases could occur immediately.[6]

---

[4] Venue is proper in 14 C 7411 because the AMA, the only defendant there, resides in Illinois. *See* 28 U.S.C. § 1391(b)(1), (c)(2).
[5] The district judge in the Middle District of Florida did not address these issues because that

On balance, the factors described above do not "strongly favor the defendant." *In re Nat'l Presto Indus., Inc.*, 347 F.3d at 664; *see also Research Automation*, 626 F.3d at 978-79 ("Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer."). Indeed, the only relevant connection to the Middle District of Florida is that the 3Lions is incorporated there. The allegedly infringing article was neither published nor written in Florida, the evidence relevant to infringement and most witnesses are not located in Florida, and venue may not be proper for the parallel coercive action in Florida so consolidation may not be possible there. The Court therefore denies the motion to the extent that it seeks transfer of the case to the Middle District of Florida.

## **CONCLUSION**

For the reasons stated herein, the motion to dismiss is granted in part and denied in part. Counts II and III of the Complaint are dismissed without prejudice. The parties are further ordered to show cause why this case should not be consolidated with Case No. 14 C 7411.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 3/25/2015

---

Court granted the alternative motion to transfer, relying wholly on the rule that the first-filed case has priority.

[6] For this reason, the Court has ordered the parties to show cause why the cases should not be consolidated.